UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BASIC FOOD GROUP, LLC,<br><br>Debtor.<br><br>JAE HO LEE, SOYOUN PARK, and BASIC FOOD GROUP, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>AHNE LAW, P.C., SAMUEL AHNE, NOAH BANK, EDWARD SHIN, CHEOL MIN KIM, and ASPEN MARKET PLACE CORP.,<br><br>Defendants. | 15-10892-JLG<br><br>Chapter 11<br><br>Adv. Pro. No. 15-01119 (JLG)<br><br>**Federal Rule 56(d) Declaration of Michael S. Kimm, Esq., in Opposition to Defendants Noah Bank and Edward Shin's Purported Motion for Summary Judgment** |

Michael S. Kimm, Esq., declares under penalty of perjury under 28 U.S.C. 1746 as follows:

1. I am the lead counsel for plaintiffs and I make this declaration in opposition to defendants Noah Bank and its CEO Edward Shin's motion for summary judgment.

2. Even as these moving defendants seek affirmative relief, they have failed to comply with basic discovery obligations, as more fully discussed below. Other

1

parties too have failed to heed their own obligations. Nor surprisingly, the moving defendants, as lenders, think that the case is easily disposed by reference to the executed lending documents. The reality is about 180 degrees flipped. Based upon the reality, we file this Rule 56(d) Affidavit or Declaration in Opposition.

    3. Federal Civil Rule 56(d) states:

>    (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>    (1) defer considering the motion or deny it;
>
>    (2) allow time to obtain affidavits or declarations or to take discovery; or
>
>    (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Because the material facts have been concealed or withheld by defendants, from plaintiffs' discovery and review, principles of basic litigation fairness render it necessary and proper to deny defendants' motion.

    4. This action seeks lender liability against defendants Noah Bank and its CEO Edward Shin for organizing a "scratch and dent" loan for $1.8 million for plaintiffs to "purchase" Basic Food Groups' "stock" supported by a "loan" of $1.3 million and a promissory note of $300,000 from the Seller and a Buyer's equity of $200,000.00. The following facts are based substantially upon recollection and review of notes.

2

5. The crux of plaintiffs' claim is that the entire loan-plus-buy-and-sell scheme was orchestrated by defendants Cheol Min Kim and Noah Bank. Attached as <u>Exhibit 1</u> is the Second Amended Complaint originally filed in the United States District Court, for the Southern District of New York, before this dispute was eventually transferred and re-filed as an adversary action before this Bankruptcy Court.

6. Annexed hereto as <u>Exhibit 2</u> is plaintiffs' status report letter ("Status Letter") to the Court dated January 5, 2017 discussing the status of discovery; defendants critical, willful, strategic violations of discovery; and the defendants' admissions spread on the record to this point. Our letter details significant discovery concealment issues and deposition violations by the leading defendants. Notably, Noah Bank has audaciously filed a "motion for summary judgment," on December 14, 2016, even as it knew full well that plaintiffs would be relying on the impending Rule 30(b)(6) deposition scheduled for December 30, 2016, which was taken on January 4, 2017, due to the absence of a court reporter.

7. As we reported in our pending Status Letter, Noah Bank failed to produce a Rule 30(b)(6) witness; the witness failed to educate and investigate facts and records in advance of the representative deposition; the witness had not even read the 15 categories of topics stated in our 30(b)(6) notice; and the resulting deposition was a total sham by the Noah Bank defendants. Attached hereto as <u>Exhibit 3</u> are the front

pages of the would-be 30(b)(6) deposition that never proceeded because of the Bank defendants' gamesmanship, which had also been attached to our Status Letter that defendants have not even acknowledged. The pages are produced in draft format, as we received them from the court reporter, because these are the first pages of the transcripts which have been completed by the Court Reporter. Plaintiffs are without a completed transcript of the Noah Bank deposition; and are without any transcript of the Ahne deposition.

8. As reported in our Status Letter, defendant Cheol Min Kim was confirmed to a deposition date for several weeks, so that there was no reasonable basis to claim that it was not properly confirmed. Yet, one day before the deposition, with the court reporter and other professionals confirmed, he claimed he was in a "scheduling conflict" and refused to attend; and has since not provided any workable date. Why a deli owner with no client obligations would claim a "conflict" is of course the very reason to perceive that the claimed "conflict" was not in good faith, and this claim resulted Cheol Min Kim's failure to attend his deposition, at all.

9. Plaintiffs deposed two fact witnesses and their summaries will shock the conscience of this Court, as it shocked all the parties.

10. Defendant Ahne was the only lawyer "in the room." He admitted that he was an ongoing attorney for Noah Bank. He had represented Noah Bank in

transactions and leases on behalf of the Bank. In December 2012, when the Basic Food transactions were closing, he considered Noah Bank his "client."

11. At the same time, Cheol Min Kim, the seller and Noah Bank customer who had loans outstanding with Noah Bank, was Samuel Ahne's client as well. Ahne represented Kim in multiple transactions. He was an ongoing client. In December 2012, when the Basic Food transactions were closing, he considered Cheol Min Kim his "client."

12. It was Cheol Min Kim or Noah Bank or both who brought plaintiff Jae Ho Lee "into the picture," as the buyer of Basic Food. Since we have not had Noah Bank's 30(b)(6) deposition and have not had Cheol Min Kim's deposition, all facts relating to their conduct are a mystery. Mr. Jae Ho Lee, however, maintains that he met the parties for a substantive meeting concerning the acquisition of Basic Food for the first time on December 13, 2012; this was the date of closing. This was the date when all or substantially all of the transaction documents were executed.

13. Noah Bank created the Financial Statements; the Request for Loans; the supporting materials; that were used to "obtain" the loan for Basic Food which were ultimately executed by Jae Ho Lee. The information was obtained from Cheol Min Kim. The two have not shed light on these maneuvers.

14. Samuel Ahne, Esq., testified that he came to represent Jae Ho Lee for the

first time in connection with Mr. Lee's acquisition of the Basic Food stock. He testified that he conducted no due diligence. He testified that there were major problems in the lease. There were at least three main problems. First the lease had not been approved for assignment or change of ownership by the landlord; this is always fatal for the new tenant. Second, Ahne testified that there was a demolition clause whereby if the building were to be demolished or otherwise modified, the tenant' lease would be terminable upon a 6 months' notice. And third there was a "recapture" clause that enabled the landlord to terminate the lease on certain terms. None of these items were discussed with Jae Ho Lee. These three items were, to Ahne, "oppressive terms." Had a serious discussion or review of these terms been done by Ahne, Jae Ho Lee would have been dissuaded from buying the business and that would place Ahne's other client Cheol Min Kim in the predicament of being unable to sell the business, which had been listed since 2011 (almost two years) and would have placed his second other client, the Bank, in the place of not participating in a $9.5 million loan of Cheol Min Kim in purchasing a building in Hoboken and refinancing a deli owned by Cheol Min Kim in Hoboken, all of which were the reasons why Basic Food had to be sold quickly.

15. Despite the fact that he, Ahne, knew that all three parties involved in the dual, loan/buy-sell transactions, he did not obtain any written waivers; did not

6

provide any written warnings as to the conflicts; and proceeded with the closing of title on an "urgent" basis. Ahne claimed he did not know why the transaction was "urgent" and had to be done immediately. The fix was in to leave Jae Ho Lee holding the bag.

16. Noah Bank's lending officer, whose deposition was taken as a fact deposition, because he was completely useless as a 30(b)(6) witness, confirmed the conflict of interest of Ahne. Another topic he confirmed was that there was a mutual mistake concerning the Buyback Agreement signed by Jae Ho Lee and Cheol Min Kim, as Buyer and Seller respectively. The Buyback Agreement states, in essence, that Cheol Min Kim would have the option, personal to him, to buy the stock back on the same terms as the sale upon 30 days' written notice to Jae Ho Lee. This, of course, is a sheer nonsense that a seller would retain the option to buy back. The correct intention was that the buyer, who was buying hastily, with no due diligence, should have retained the option to force the seller to Buyback if the Buyer discovered something dissatisfactory.

17. The Bank's Lending Officer frankly stated that plaintiffs' version is correct; that the Buyback agreement should have given the option to rescind the sale to the Buyer and that it was clear mutual mistake that the agreement form gave the option to the Seller.

18. Plaintiffs' assertions that the business was "going under" was validated in these two depositions. The Lending Officer stated that Basic Food's 2011 revenue declined notably. And unless Basic Food was resolved, Cheol Min Kim, the seller, could not close on the pending refi-and-purchase loan involving $9.5 million worth of banking business. That involved Cheol Min Kim's acquisition of a property in Hoboken. In 2011, while his Basic Food business in Manhattan declined in revenue, he was focused on Aspen Market in Hoboken which he purchased before. In 2011, while Basic was "tanking," Kim sought to refinance the SBA loan on Aspen Market and, importantly, to purchase the building in which Aspen was doing business, and these two transactions were worth $9.5 million aggregate, with the property acquisition being $5.5 million alone.

19. Noah Bank clearly wanted to handle the SBA loan and to participate in the building mortgage. Thus, sometime in 2011, when both Cheol Min Kim and Noah Bank wanted to do the Aspen refi/loan, they conceived of the plan to eliminate Basic Food from Cheol Min Kim's asset portfolio. They needed a buyer. The Buyer they found was both an acquaintance of Cheol Min Kim and Noah Bank and already a loan customer of Noah Bank because Jae Ho Lee had an antecedent loan outstanding for his other deli business, Hudson Market, in Battery Park City, acquired in 2009.

20. Had anyone done any due diligence, the transaction would not be feasible

because Basic was losing money; sales were declining; and other problems existed including the fact that the landlord had not consented to the lease assignment, and thus ipso facto invalid. For this reason, Noah Bank instructed its own attorney Ahne to arrange for certain documents; arranged for a lightening closing on December 13, 2012, without even consulting with Jae Ho Lee as to his convenience. Jae Ho Lee was called to "drop by" that day to sign some documents; he effectively signed his life's savings away.

21. All of the instruments were to have been "reviewed" by the lawyer, Ahne. As he was already the lawyer for Noah Bank; already the lawyer for the seller Kim; the fact that he was a "lawyer" for the Buyer/new borrower in "namesake" was totally ineffective, it was a sham in a sham transaction. The "lawyer" review never occurred; Mr. Ahne essentially stated that the pro's and con's were never explained to Mr. Lee from his viewpoint as the Buyer.

22. Based upon the foregoing facts, showing clear conflicts of interest; duplicitous transactions; deceit of Jae Ho Lee by all defendants, the Court should consider the cited depositions and await the remaining discovery which have been concealed by defendants before moving any further toward the "merits" of the case. Noah Bank would have the Court believe that this is a run of the mill SBA loan in default; it is not. Noah Bank created the scenario; controlled the key players

including the only "attorney" in the "room"; and dictated the terms and condition; and Mr. Lee and his wife's only involvement was to appear and sign documents that had been "reviewed" — actually fixed — by the "lawyer" who they thought was representing them but was actually representing his antecedent and ongoing clients of much more financial stature, Seller Cheol Min Kim and lender Noah Bank.

23. Given its flagrant, willful violation of discovery, the Rule 30(b)(6) deposition, defendants' motion is not even brought in good faith. They forfeit their opportunity to make a new motion after discovery because of their transparent gamesmanship.

24. I certify pursuant to 28 U.S.C. 1746, under penalty of perjury, that the foregoing statements by me are true and correct.

WHEREFORE, defendant Noah Bank and Edward Shin's motion for summary judgment should be denied.

Dated: January 10, 2017              /s/ Michael S. Kimm

                                             Michael S. Kimm, Esq.
                                             Adam Garcia, Esq.
                                             KIMM LAW FIRM
                                             333 Sylvan Avenue, Suite 106
                                             Englewood Cliffs, New Jersey 07632
                                             T: 201-569-2880
                                             *Attorneys for Plaintiffs*

Certificate of Service

Michael S. Kimm certifies that the foregoing and all supporting papers were served on all counsel of record, by ECF.

Dated: January 10, 2017                    /s/ Michael S. Kimm
                                           Michael S. Kimm