**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
|      Basic Food Group, LLC, | : | |
|                     Debtor. | : | Case No. 15-10892 (JLG) |

----------------------------------------------------------------------------x

| | | |
|---|---|---|
| Jae Ho Lee, Soyoun Park and | : | |
| Basic Food Groups, LLC, | : | |
|              Plaintiffs, | : | |
| | : | |
|     -against- | : | Adv. Pro. No. 15-01119 (JLG) |
| | : | |
| Ahne Law, P.C., Samuel Ahne, Noah Bank, | : | |
| Edwin Shin, Cheol Min Kim, and | : | |
| Aspen Market Place Corp., | : | |
|             Defendants. | : | |

----------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER ON MOTION OF SAMUEL AHNE AND AHNE LAW, P.C., FOR SUMMARY JUDGMENT DISMISSING ALL CLAIMS AGAINST THEM, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7056

A P P E A R A N C E S :

AHNE & JI LLP
*Attorney for Defendants Samuel Ahne and Ahne Law, P.C.*
1220 Broadway, Suite 502
New York, NY 10001
By:    Younghoon Ji, Esq.

THE BASIL LAW GROUP
*Attorney for Defendants Samuel Ahne and Ahne Law, P.C.*
32 East 31st Street, 9th Floor
New York, NY 10016
By:    Robert J. Basil, Esq.

KIMM LAW FIRM
*Attorney for the Plaintiffs*
333 Sylvan Avenue, Suite #106
Englewood Cliffs, New Jersey 07632
By:    Michael S. Kimm, Esq.

**JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

In 2012, Jae Ho Lee ("Lee") and his wife Soyoun Park ("Park") purchased 100% of the membership units in Basic Food Group LLC, the debtor herein (the "Debtor" or "Basic Food"), from Cheol Min Kim ("Kim"). At that time, Basic Food's principal asset was a deli/café in New York City that Kim had been operating since he acquired it in or about 2009. Noah Bank, N.A. ("Noah Bank") financed a portion of Lee's acquisition costs with a $1.3 million loan (the "Noah Bank Loan") to the Debtor. Lee and Park are guarantors under that loan. Eventually, the Debtor defaulted under the loan and filed for bankruptcy herein.

In this adversary proceeding, the Debtor, Lee and Park (collectively, the "Plaintiffs")[1] are suing Noah Bank and its president and Chief Executive Officer, Edward Shin ("Shin," together with Noah Bank, the "Bank Defendants"), Kim, Aspen Market Place Corp. ("Aspen"), Samuel Ahne, Esq. ("Ahne") and Ahne Law P.C. ("Ahne Law," together with Ahne, the "Ahne Defendants") for damages occasioned by their alleged wrongdoing in connection with Lee's acquisition of Basic Food.[2] The Plaintiffs assert five of the seven causes of action in their Second Amended Complaint (the "Complaint" or "SAC") against the Ahne Defendants.[3] Counts

---

[1]    On or about April 30, 2018, Mr. Lee passed away and his surviving wife, and plaintiff herein, Ms. Park, was substituted as the executrix for Mr. Lee's estate. *See* Notice of Appearance in Adversary Proceeding and Substitution of Plaintiff Jae Ho Lee by Soyoun Park as Administrator of Estate of Jae Ho Lee [AP ECF No. 113]. Citations to "AP ECF No. __" refer to entries on the Court's electronic docket in this adversary proceeding (AP No. 15-1119). Citations to "ECF No. __" refer to entries on the Court's electronic docket in the Debtor's bankruptcy case (No. 15-10892).

[2]    Second Amended Complaint [AP ECF No. 1, Doc. 39].

[3]    In their Complaint, the Plaintiffs assert seven claims for relief against the defendants, as follows: (i) claims under the Racketeer Influenced and Corrupt Organizations Act (the "RICO Claims") against all defendants (Counts 1 and 2), (ii) a claim of breach of fiduciary duty against the Ahne Defendants (Count 3), (iii) a request for a declaratory judgment against all defendants (Count 4), (iv) a claim of breach of contract and implied covenant of good faith and fair dealing against all defendants (Count 5), and separate claims for fraud in the inducement against (v) Kim and Aspen (Count 6), and the Bank Defendants (Count 7).

1 and 2 allege violations of the RICO statute and conspiracy to commit those violations.  In July

2016, the Court dismissed those Counts against all defendants, with prejudice.[4]  In October 2018,

the Plaintiffs voluntarily dismissed Count 4 – Declaratory Judgment - against all defendants.

The matter before the Court is the Ahne Defendants' joint motion for summary judgment

dismissing the remaining claims alleged against them in the Complaint: Count 3 ( Breach of

Fiduciary Duty) and Count 5 (Breach of Agreement and Implied Covenant of Good Faith and

Fair Dealing) of the Complaint (the "Motion").[5]  The Plaintiffs oppose the Motion.[6]  For the

reasons explained below, the Ahne Defendants have demonstrated that they are entitled to

judgment dismissing Counts 3 and 5 as a matter of law.  Accordingly, the Court GRANTS the

Motion.

## Jurisdiction

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a)

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.). The relief sought in the Motion is not within the core jurisdiction of the Court because the

---

[4]   *In re Basic Food Grp., LLC*, No. 15-10892, 2016 WL 3677673 (Bankr. S.D.N.Y. July 1, 2016).

[5]   In support of the Motion, the Ahne Defendants submitted: (i) a Local Rule 7056.1 Statement of Uncontested Facts [AP ECF No. 200-2]; (ii) the Brief of Samuel Ahne and Ahne Law, P.C., In Support of Motion for Summary Judgment Dismissing All Claims Lodged Against Them By Plaintiffs, Pursuant to Federal Rule of Bankruptcy Procedure 7056 [AP ECF No. 200-3]; (iii) the Declaration of Younghoon Ji in Support of the Motion [AP ECF No. 200-4]; (iv) the Declaration of Samuel Ahne in Support of the Motion [AP ECF No. 200-5] (the "Ahne Declaration); and  (v) a Reply Memorandum of Law In Further Support of Defendants' Motion for Summary Judgment [AP ECF No. 205].

[6]   *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [AP ECF No. 204] (the "Opposition"); Plaintiffs' Response to Defendants' Statements of Material, Undisputed Facts [AP ECF No. 204-2] that "adopts by incorporation the Plaintiffs' Statement of Material Facts presented in opposition to Noah Bank and Edward Shin's motion for summary judgment" [AP ECF No. 94-3]; and  Declaration of Michael Kimm, Esq. in Opposition to Defendants' Motion for Summary Judgment [AP ECF No. 204-3].

claims at issue do not invoke substantive rights provided by title 11 of the United States Code. *See* 28 U.S.C. §§ 1334(b), 157(b)(1); *see also Stern v. Marshall*, 564 U.S. 462, 472, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) ("Under our reading of the statute, core proceedings are those that arise in a bankruptcy case or title 11."); *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 937 (S.D.N.Y. 1991) (stating that core jurisdiction encompasses proceedings which "invoke a substantive right provided by title 11" or that "would have no existence outside of the bankruptcy case."). *See also* 28 U.S.C. § 157(c)(1) (stating that non-core proceedings are those that are not core, "but [are] otherwise related to a case under title 11."). Rather, all parties agree, and the Court finds that the claims asserted by the Debtor against the Ahne Defendants fall within the scope of the Court's non-core related-to jurisdiction because the resolution of those claims will impact the value of the Debtor's estate. *See Parmalat Capital Fin., Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) ("[A] civil proceeding is 'related to' a title 11 case if the action's outcome might have any conceivable effect on the bankruptcy estate."); *see also Robinson v. Daley (In re Daley)*, 224 B.R. 307, 313 (Bankr. S.D.N.Y. 1998) ("Causes of action owned by the debtor prior to its bankruptcy and which become property of the debtor's estate, as well as suits between third parties which have an effect on the bankruptcy estate are bases for related-to jurisdiction." (*citing Celotex v. Edwards*, 514 U.S. 300, 308 n.5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995))).

However, that jurisdiction does not extend to the claims asserted by Lee and Park against the Ahne Defendants. The resolution of those claims will have no impact on the Debtor's estate or assets. *See, e.g., In re Johns–Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008) (noting that "a third-party action does not create 'related to' jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate. Shared facts between the third-

3

party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-

party action 'related to' the bankruptcy...."); *cf. Victory Markets, Inc. v. NYS Unemployment Ins.,*

*Unemployment Ins. Div., Dep't of Labor, State of New York (In re Victory Markets Inc.*, 263 B.R.

9, 15 (Bankr. N.D.N.Y. 2000) (noting that "the scope of a bankruptcy court's 'related to'

jurisdiction is further limited where non-debtor third parties are involved. Because an endless

array of cases would 'relate to' any single bankruptcy administration, the Second Circuit has

limited 'related to' jurisdiction to 'significant' relation and not simply a remote connection.")

(citations omitted). Although not raised by the parties, the Court considers whether it has

jurisdiction over those claims based on principles of supplemental jurisdiction pursuant to 28

U.S.C. § 1367. Under that section, "in any civil action of which the district courts have original

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

"Claims are 'part of the same case or controversy' when they 'derive from a common nucleus of

operative facts,' and 'are such that [the claimant] would ordinarily be expected to try them all in

one judicial proceeding[.]' " *Picard v. HSBC Bank PLC (In re Bernard L. Madoff Inv. Sec. LLC)*,

561 B.R. 334, 348 (Bankr. S.D.N.Y. 2016) (internal quotations and citations omitted). The

Second Circuit has held that a bankruptcy court may exercise supplemental jurisdiction under 28

U.S.C. § 1367. *See Lionel Corp. v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92

(2d Cir. 1994); *see also Shafferman v. The Queens Borough Public Library (In re JMK Constr.*

*Grp., Ltd.)*, 502 B.R. 396, 403 n.6 (Bankr. S.D.N.Y. 2013); *Gowan v. HSBC Mortg. Corp. (In re*

*Dreier LLP)*, No. 10-5456, 2012 WL 4867376, at *5 (Bankr. S.D.N.Y. 2012). In thiscase, as

discussed below, it is clear that Lee and Park's claims share a common nucleus of operative facts

as the claims of the Debtor—i.e., the underlying Acquisition and Financing transactions (as

defined below) with the Bank Defendants and seller Kim—and it would not be judicially

economical to try these overlapping matters in different proceedings. As such, the Court

concludes that it has supplemental jurisdiction to adjudicate Lee and Park's claims against the

Bank Defendants in this action.

For all non-core matters, this Court cannot enter a final judgment without the Plaintiffs'

and Ahne Defendants' consent. *See* 28 U.S.C. § 157(c)(2) ("[T]he district court, with the consent

of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a

bankruptcy judge to hear and determine and to enter appropriate orders and judgments ...."").

They have consented to this Court's entry of a final judgment on these matters.

## **Facts**[7]

The Debtor is a limited liability company whose sole members are Lee and Park. Its sole

asset was a deli/café (the "NY Deli") located in New York City. Lee and Park acquired their

membership interests in the Debtor from Kim in December 2012 (the "Acquisition") for a

commitment equal to $1.8 million that was partially financed by the $1.3 million Noah Bank

Loan (the "Financing"). That loan is backed by the Small Business Administration and is

secured by a lien on the Debtor's assets. It is guaranteed by Lee and Park.[8]

---

[7]   The Court includes a discussion of the events leading up to the commencement of this action, including allegations in the Complaint. Facts that are material to the resolution of the Motion, including those that are in dispute, are discussed below.

[8]   *See* Security Agreement, UCC Financing Statement [AP ECF No. 200-3, Ex. J.]; Unconditional Guarantees [AP ECF No. 200-3, Ex. H].

In 2012, Kim was indebted to Noah Bank on account of financing from the bank in connection with his acquisition of Basic Food (the "Noah-Kim Basic Food Loan"), and his acquisition of Aspen, a deli/café operation in Hoboken, New Jersey.  *See* SAC ¶ 57.  The Plaintiffs maintain that in the fall of 2012, Basic Food's business was failing and both Kim and Noah Bank understood that without an infusion of capital into the Basic Food operations, Kim would default under the Noah-Kim Basic Food Loan.  *See* SAC ¶ 56.  Kim was aware that at that time, Lee was operating a deli/café in New York City.  The Plaintiffs contend that Kim "targeted" Lee and schemed with the Bank Defendants to sell him the Basic Food business, *i.e.*, the NY Deli. *Id*. ¶ 58.  The Plaintiffs contend that Kim, with the assistance of the Bank Defendants, duped and defrauded Lee into acquiring the stock of Basic Food and into causing Basic Food to incur $1.3 million of indebtedness from Noah Bank to do so.  *See id*. ¶¶ 12, 59-60.

The Plaintiffs assert that for defendants to accomplish their fraudulent scheme, they needed to ensure that the sale of the NY Deli was effectuated through the sale of Basic Food's stock, not its assets, and that the sale would be done without a "due diligence" review.  SAC ¶ 64.  The say that in furtherance of the scheme, Noah Bank assigned Ahne the task of representing Lee.  *Id.*  They contend that Ahne was not a neutral lawyer and was selected by the Bank Defendants to handle the transaction because he was willing to avoid doing any due diligence review for his client, in order to protect the Bank.  *Id.* ¶ 68.  Ahne is an attorney licensed to practice law in New York, who practices under the auspices of Ahne Law.  SAC ¶ 5.  The Plaintiffs assert that in mid-2012, Ahne represented Kim in his acquisition of Aspen and that the Bank Defendants have been the source of a steady stream of referrals to him.  *Id.* ¶¶ 66, 69.  The Plaintiffs maintain that Ahne's  representation of Lee gave rise to a "trilateral" conflict of interest because Ahne owed fiduciary duties to Lee and Park, a duty of loyalty to Kim as a client

6

whose sale transaction had to be protected, all while simultaneously believing that he owed an indirect sense of loyalty to the Bank Defendants for their steady stream of referrals and other benefits. *Id*. ¶¶ 73-75. They maintain that Ahne failed to disclose the conflicts to Lee and Park. *Id*. ¶ 73.

The Plaintiffs assert that in November 2012, Shin told Ahne that he was being "retained," to represent the Plaintiffs in the Acquisition and Financing transactions. *Id.* ¶ 70. They say that although Ahne was aware of the risks inherent in a stock purchase transaction, he never met with either Lee or Park; never spoke with either of them; never provided advice relating to the pitfalls of the transaction to either of them; never provided due diligence to either of them; and failed to provide a minimal level of protection to them. *Id.* ¶¶ 70, 76. *See also id.* ¶ 67 (asserting that Ahne never contacted Lee; never telephoned or emailed him; never provided any due diligence advice; never even conducted a simple lien/judgment search of the business, and totally disregarded his professional responsibility to protect the assignee whom he "represented.") They also contend that Ahne failed to review Basic Food's business records, sales journals, tax filings, or financial or corporate records, and did not conduct a title, lien or judgment search or investigate Basic Food's debts and obligations. *Id.* ¶ 71. They maintain that within a period of less than one month after he was retained to represent Lee and Park, and without conducting any diligence, Ahne scheduled a closing of the Acquisition and Financing transactions on December 13, 2012, at which time, he presented the operative documents to Lee for the first time. *Id.* ¶¶ 71-72. *See also id.* ¶ 70 (alleging that Ahne "proceeded to the simultaneous "contract and closing" [of the transaction] never having spoken a single word with his clients.") The Plaintiffs complain that even as Ahne knew that a simultaneous "contract" and "closing of title" was scheduled to occur, he failed to advise Lee and Park on matters such as conflicts of interest; the

7

effects of a simultaneous contract and closing; and the financial significance of Plaintiffs' transactions. *Id.* ¶ 77.

The Plaintiffs maintain that Ahne not only failed to provide "affirmative advice" to Lee and Park, but also deliberately provided false information to them with respect to the "buy back agreement" executed in connection with the Acquisition (the "Buy-Back Agreement"). *Id.* ¶ 78.[9] They assert that Lee specifically negotiated with Kim an option to compel Kim, as seller, to buy back the Basic Food stock from Lee, if Lee deemed the sale to be unsatisfactory. *Id.* They maintain that notwithstanding that agreement, the Buy-Back Agreement gave the option to Kim, not to Lee. *Id.* ¶¶ 78-79. The Plaintiffs allege that at all relevant times, Kim and the Bank Defendants knew that the NY Deli was operating at a loss and that the business was worth far less than $1.8 million, but that, with Ahne's help, they concealed those and other facts material to the Acquisition and Financing transactions from Lee. *See id.* ¶¶ 93, 99-102. Further, they contend that during their negotiations relating to Lee's acquisition of Basic Food, Kim misrepresented to Lee that Basic Food was "profitable," and that it yielded between $200,000 to $400,000 per year" for the owner. *See id.* ¶¶ 12, 59, 62, 100.

The closing of the Acquisition and Financing transactions took place at Noah Bank's offices in Palisades Park, New Jersey, on December 13, 2012. At that time, Lee and Kim executed the Noah Bank Loan Agreement, Purchase Agreement and Buy-Back Agreement. The latter vested Kim with the option to purchase 100% of the Basic Food units from Lee on the same terms and conditions as set forth in the Purchase Agreement. At the closing, Lee delivered

---

[9]     Buy-Back Agreement between Lee and Kim, dated December 13, 2012. *See* Supplemental Exhibit 1 to the Declaration of Michael Kimm at 150 [AP ECF No. 204-3].

a $300,000 promissory note payable to Kim, and the proceeds of the $1.3 million Noah Bank

Loan, of which approximately $900,000 went towards paying off the Noah-Kim Loan.[10]

Eventually Basic Food defaulted under the Noah Bank Loan.   On April 15, 2015, the

Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code herein (the "Petition

Date").[11]   It remained in possession and control of its business and assets as a debtor in

possession under sections 1107(a) and 1108 of the Bankruptcy Code until February 14, 2017,

when the Court granted Noah Bank's motion to convert the case to one under chapter 7 of the

Bankruptcy Code.[12]   Alan Nisselson is the Court-appointed chapter 7 trustee of the Debtor's

estate.[13]   This adversary proceeding was pending in the United States District Court for the

Southern District of New York on the Petition Date.  By order dated June 29, 2015, and pursuant

to 28 U.S.C. § 157(a) and the Standing Order of Reference Re: Title 11, 12 Misc. 32 (S.D.N.Y.

Feb. 1, 2012) (Preska, C.J.), the District Court referred the adversary proceeding to this Court.

## Discussion

Rule 56 Standards

Federal Rule of Civil Procedure 56, made applicable to this case under Federal Rule of

Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477

---

[10]    Closing Statement. *See id.* at 148.

[11]     Voluntary Petition (Chapter 11) [ECF No. 1].

[12]    Order Granting Motion to Convert Chapter 11 Case to Chapter 7 [ECF No. 121].

[13]    Notice of Appointment of Trustee Alan Nisselson [ECF No. 122].

U.S. 317, 322 (1986) (Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant] is entitled to a judgment as a matter of law."); *NML Capital v. Republic of Argentina*, 621 F.3d 230, 236 (2d Cir. 2010) ("Summary judgment is proper only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.") (citations omitted). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.") The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Under Rule 56, the movant bears the initial burden of proof that the undisputed facts entitle it to summary judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995); *see also Hellstrom v. U.S. Dep't of Veterans Affairs*, 46 F. App'x 651,

654 (2d Cir. 2002) ("The moving party bears the initial burden of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted). In determining whether summary judgment is appropriate, the court must view the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all inferences against the moving party. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255).  If the movant meets its initial burden the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" (see *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); it cannot rely on "conclusory allegations or unsubstantiated speculation" in its opposition to summary judgment.   *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ). Further, "mere denials or unsupported alternative explanations of its conduct" will not suffice. *Senno v. Elmsford Union Free School Dist.*, 812 F.Supp.2d 454, 467 (S.D.N.Y. 2011) (citing *SEC v. Grotto*, No. 05 civ. 5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006) ).  "An issue of fact is 'genuine' if the evidence is such that a [trier of fact] could return a verdict for the non-moving party," *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) ), and a fact is only "material" if it might affect the outcome of the litigation under the relevant law. *Id.* (citation omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (noting that opposition to a summary judgment motion cannot be based on "conclusory allegations or unsubstantiated speculation.").  Rather, the non-moving party must still come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat a properly

11

supported summary judgment motion. *Liberty Lobby,* 477 U.S. at 256.    Accordingly,

"[s]ummary judgment is properly granted when the non-moving party 'fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.' " *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir.

2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 322).   "A party asserting that a fact cannot

be or is genuinely disputed must support the assertion by (A) citing to particular parts of

materials in the record ... or (B) showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1). Further, the court "need consider only the cited

materials, but it may [also] consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Analysis

Count 3: Breach of Fiduciary Duty

In support of Count 3, Plaintiffs allege that Ahne served in the capacity of "closing

attorney," and, as such, "owed a fiduciary duty to the plaintiffs relating to their acquisition of the

controlling interests of Basic Food Group, LLC."  SAC ¶ 139.  They say that  "Ahne failed to

provide a minimal degree of protection for plaintiffs[,]" notwithstanding that the "plaintiffs were

becoming obligated to $1.8 million in notes, loans, and other obligations, and despite the fact

that plaintiffs may be infusing their own funds into the business scenario[.]"  *Id.*  They assert that

Ahne "failed to engage in any due diligence, any review of important legal instruments, failed to

provide any advice, failed to meet with clients, and failed to protect them." *Id.* ¶ 140. Moreover,

they say that Ahne "created legal instruments that were antagonistic to and contrary to the legal

and financial interests of each plaintiff[;]" "caused them to sign and obligate themselves to

numerous financial and legal obligations; intentionally created a buy-back agreement that

12

favored the wrong party; and deliberately avoided protecting plaintiffs at all." *Id.* They contend that in so acting, Ahne breached his fiduciary duties to the plaintiffs. *Id.* ¶ 141.

In the attorney liability context, a breach of fiduciary duty claim is governed by the same standard as legal malpractice. *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 271–272, 780 N.Y.S.2d 593 (1st Dep't 2004) ("We have never differentiated between the standard of causation requested for a claim of legal malpractice and one for breach of fiduciary duty in the context of attorney liability."). The elements of a claim for legal malpractice under New York law are: (1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citing *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood,* 170 A.D.2d 108, 114, 573 N.Y.S.2d 981 (1991)); *Dempster v. Liotti,* 86 A.D.3d 169, 176, 924 N.Y.S.2d 484 (2d Dept. 2011) ("To state a cause of action to recover damages for legal malpractice, a plaintiff must allege: (1) that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession; and (2) that the attorney's breach of the duty proximately caused the plaintiff actual and ascertainable damages" (internal quotation marks omitted) (citing *Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP,* 26 N.Y.3d 40, 19 N.Y.S.3d 488, 41 N.E.3d 353; *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer,* 8 N.Y.3d 438, 441, 835 N.Y.S.2d 534, 867 N.E.2d 385). *See also Ocean Ships, Inc. v. Stiles,* 315 F.3d 111, 117 (2d Cir. 2002) (The elements of legal malpractice under New York law are "' (1) a duty, (2) a breach of the duty, and (3) proof that the actual damages were proximately caused by the breach of the duty.'") (quoting *Tinelli v. Redl,* 199 F.3d 603, 606 (2d Cir. 1999) (quoting *Marshall v. Nacht,* 172 A.D.2d 727, 569 N.Y.S.2d 113, 114 (2d Dep't 1991))).

13

The Plaintiffs contend that the Court must deny the Motion because Ahne committed malpractice when he (i) failed to perform required due diligence; (ii) drafted the allegedly defective Buy-Back Agreement; and (iii) undertook the representation, notwithstanding that the alleged "trilateral representation" of Noah Bank, Kim, and Lee created a web of multi-layer conflicts of interest.  Opposition at 11-19.   To satisfy the negligence prong of an attorney malpractice claim, a plaintiff must demonstrate that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d at 337 (quoting *Grago v. Robertson,* 49 A.D.2d 645, 646, 370 N.Y.S.2d 255 (1975)); *see also, 675 Chelsea Corp. v. Lebensfeld*, No. 95 Civ. 6239, 1997 WL 576089, at *2 (S.D.N.Y. Sept.17, 1997) ("In order to recover damages for malpractice, it must be established that the attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community.") (quoting *Hwang v. Bierman*, 206 A.D.2d 360, 614 N.Y.S.2d 51, 52 (2d Dep't 1994)).  It is an inexact analysis that is done as of the time of the representation.  *Darby & Darby, P.C. v. VSI Intern., Inc.,* 95 N.Y.2d 308, 313 (2000) ("What constitutes ordinary and reasonable skill and knowledge cannot be fixed with precision, but should be measured at the time of representation . . . ") (citations omitted).   An attorney's conduct is not measured by "that of the most skilled attorney," but rather, as that of a "competent and qualified" attorney.  *Bua v. Purcell & Ingrao*, P.C., 99 A.D.3d 843, 846, 952 N.Y.S.2d 592, 597 (2d Dep't 2012) (citation omitted).

Where the nonmoving parties bear the burden of proving their claim at trial, the moving parties can satisfy their initial burden in support of the summary judgment motion by demonstrating the absence of factual support for an essential element of the nonmoving party's

14

claim.  *See Celotex Corp. v. Catrett*, 477 U.S. at 325 (noting that where the nonmoving party

bears the burden of truth, "the burden on the moving party may be discharged by 'showing'—

that is, pointing out to the district court—that there is an absence of evidence to support the

nonmoving party's case.")  *See also Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.

2008)  ("When the burden of proof at trial would fall on the nonmoving party, it ordinarily is

sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential

element of the nonmovant's claim." (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322-23).  If the

moving party satisfies that burden, it is incumbent upon the non-moving party to come forward

with "specific facts showing that there is a genuine issue for trial" in order to defeat a properly

supported summary judgment motion. *Liberty Lobby,* 477 U.S. at 256.

The uncontested facts demonstrate the Lee and Kim were close friends who began

discussions regarding Kim's sale of Basic Food to Lee in the fall of 2012. *See* Defendants

Statement of Uncontested Facts [AP ECF No. 200-1] ¶¶ 4, 5, 13 ("Defs' Statement").  At that

time, Lee was an experienced business operator who owned and was operating a profitable

deli/café, known as the Manhattan Battery Park Hudson Produce, Inc. ("Hudson"), in Manhattan.

*Id.* ¶ 6.    Neither Kim nor Lee had counsel at that time. *Id.* ¶ 8.  Mr. Kim and Jun Woo Kim, a

Noah Bank loan officer, recommended that Lee retain Ahne.   *Id.* ¶¶ 17, 18, 25.  The Acquisition

and Financing transactions closed on December 13, 2012.  Ahne's first exposure to those

transactions was on November 26, 2012.  By that day, Lee and Kim had reached final agreement

on the terms of the Acquisition and the terms of the Financing, and Noah Bank had approved

Lee's loan application.  *Id.* ¶ 26, 27.   On that day, Ahne attended a meeting at Noah Bank with

Kim, Lee and Jun Woo Kim.  *Id.* ¶ 16.  Ahne had previously met Lee during the summer of 2012

when Lee consulted with Ahne regarding the potential purchase of a bagel shop. *Id.* ¶ 14.   At

15

the November 26 meeting Defendant Kim re-introduced Lee to Ahne and advised Ahne that Lee

was his close friend and that Lee wished to retain Ahne's legal services for the transactions, the

essential terms of which were already agreed upon. *Id.* ¶ 16.  During the November 26 meeting:

> Ahne advised Lee that he had previously represented Defendant Kim and Noah
> Bank in unrelated matters and that Lee was free to retain the counsel of his choice.
> Defs' Statement ¶¶ 20, 22, 23.   Plaintiff Lee expressed no objections regarding
> those earlier representations. *Id.* ¶ 21.[14]

> Jun Woo Kim confirmed that for Noah Bank to make the Noah Bank Loan, the
> Acquisition transaction had to be configured as a stock transfer rather than an asset
> purchase.  At that time, Ahne explained to Lee the meaning of a stock transfer
> transaction; Plaintiff Lee advised Ahne that he was familiar with stock transfer
> transactions because he had acquired Hudson through a stock transfer transaction
> earlier that same year. *Id.* ¶¶ 28, 29, 30.

After the meeting, Ahne, in his capacity as Lee's closing counsel, obtained a copy of the lease

for Basic Food's business premises, as well as Basic's corporate entity documents, reviewed

them, generated a lease review summary document, provided his lease review summary to Lee

via email on November 28, 2012, and requested a meeting. *Id.* ¶ 31.

Ahne and Lee did not execute a retention agreement.  There is no evidence in the record

that Ahne failed to perform any of the tasks Lee requested him to perform in connection with the

closing.  Neither Kim nor Lee testified that either of them had intended for the Buy-Back

Agreement to be drafted to vest Lee with a put option.   To that end, neither of them testified that

they had ever discussed the idea of a buy-back or negotiated the terms of the Buy-Back

Agreement, let alone agreed that it should inure to Lee's benefit.  To the contrary, Ahne's

---

[14]    Lee admitted that at the November 26, 2012 meeting, Kim and Jun Woo Kim, the Noah Bank loan officer,
recommended that Lee retain Ahne as his closing counsel based on their past experiences with Ahne. *See* Defs'
Statement ¶¶ 17, 18.  Lee does not deny that he was advised that Ahne represented Noah Bank and Kim on prior
occasions.  There is no evidence that he objected to the retention of Ahne.  However, he denies that Ahne ever asked
him to waive any conflicts arising out of that representation. *Id.*  ¶ 19.

16

uncontradicted testimony is that Lee and Kim told him that the Buy-Back Agreement should be drafted with the purchase option to vest in Kim, not Lee. *See* Transcript of Deposition of Samuel Ahne [AP ECF No. 94-8] ("Ahne Depo. Tr.") at 141:19-144:1. Indeed, the inclusion of the Buy-Back Agreement was identified as an essential element of the Noah Bank Loan, and was not included to protect the interests of either the buyer or seller, but to protect the interests of Noah Bank. *See* Transcript of Deposition of Cheol Min Kim [AP ECF No. 94-5] at 110:21-111:6, 112:13-17; Ahne Depo Tr. at 75:3-8.  Moreover, Ahne's deposition testimony is unrebutted that Lee advised him that financial due diligence of the Acquisition had already been completed and that plaintiff Lee "was happy with the income and all other aspects of [Basic Food's] business." *Id*. 82:4-9. The Ahne Defendants have met their burden of demonstrating that the uncontroverted evidence does not support Plaintiffs' assertion that Ahne was negligent in his representation of the Plaintiffs.

Whether malpractice has been committed is ordinarily a factual determination to be made by the jury.  *See Greene v. Payne, Wood & Littlejohn*, 197 A.D.2d 664 (2d Dep't 1993), *Corley v. Miller,* 133 A.D.2d 732, 735, 520 N.Y.S.2d 21 (2d Dep't 1987); *Grago v. Robertson,* 49 A.D. 2d 645, 646 (3d Dep't 1975).  Through their receipt of expert testimony, jurors are able to properly assess "the standard of care in the legal profession, whether the defendant-attorney failed to comply with that standard, and whether the negligence proximately caused any injury to the plaintiff-client." *Stonewell Corp. v. Conestoga Title Ins. Co*., 678 F.Supp.2d 203, 209 (S.D.N.Y. 2010).  To defeat a summary judgment motion, a plaintiff alleging legal malpractice "cannot rest on his 'allegations of what he views as deficiencies in defendant's conduct as his attorney,' but must offer 'evidence to establish the standard of professional care and skill that [defendant] allegedly failed to meet.' " *Hatfield v. Herz*, 109 F. Supp. 2d 174, 179 (S.D.N.Y.

17

2000) (quoting *Thaler & Thaler v. Gupta*, 208 A.D.2d 1130 (3d Dep't 1994); *see also Estate of Ginor v. Landsberg*, 960 F.Supp. 661, 672 (S.D.N.Y.1996) (Sand, J.), *aff'd*, 159 F.3d 1346 (2d Cir. 1998).   The courts generally require plaintiffs in malpractice actions to "proffer expert opinion evidence on the duty of care to meet their burden of proof in opposition to a properly supported summary judgment motion." *Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo*, 259 A.D.2d 282, 686 N.Y.S.2d 404, 405–06 (1st Dep't 1999); *see also Kranis v. Scott,* 178 F. Supp. 2d 330, 334 (E.D.N.Y. 2002) ("In most legal malpractice actions, the plaintiff must introduce expert testimony in order to establish the standard of care in the legal profession and to testify as to whether the defendant's acts or omissions negligently deviated from that standard and whether such negligence was the proximate cause of any damages to plaintiff."); *Nobile v. Schwartz*, 265 F. Supp. 2d 282, 288 (S.D.N.Y. 2003) (In summary judgment motion,  a showing that the defendant "failed to exercise that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community . . . generally requires expert opinion evidence . . . " (internal citations omitted);  *Healy v. Finz & Finz, P.C.*, 918 N.Y.S.2d 500, 502 (2d Dep't 2011) ("Expert testimony is normally needed to establish that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession") (quoting *Northrop v. Thorsen,* 46 A.D.3d 780, 782, 848 N.Y.S.2d 304 (2d Dep't 2007)).

"The requirement that there be expert support for a claim of malpractice reflects the reality that a lawyer's duties to a client, particularly in complex or nuanced situations, are often not self-evident to a lay person, and discerning the standard of care as to a particular legal problem is often outside of the ordinary experience of a lay fact-finder." *Joseph DelGreco & Co. v. DLA Piper L.L.P. (U.S.)*, 899 F.Supp.2d 268, 278 (S.D.N.Y. 2012), *aff'd sub nom. In re Joseph*

18

*DelGreco & Co., Inc.*, 535 F.App'x 31 (2d Cir. 2013).  There is a limited exception to that rule.

"The only circumstances in which expert opinion evidence is unnecessary are those in which 'a

jury could reasonably conclude, on the basis of their own ordinary experience, that defendant's

conduct was so negligent as to fall below *any* standard of care.'" *Id*. at 277 (quoting *Hatfield*,

109 F.Supp.2d at 180); *see also Sallam v. Nolan,* No. 96-9661, 116 F.3d 466 (table), 1997 WL

311607, at *2 (2d Cir. June 11, 1997) ("Unless a juror's ordinary experience provides sufficient

basis to assess the adequacy of the professional service, or the attorney's conduct falls below any

standard of due care, expert testimony is necessary to establish the attorney acted negligently.")

(citing *Greene v. Payne, Wood & Littlejohn*, 197 A.D.2d 664 (2d Dep't 1993)).

In opposing the Motion, the Plaintiffs essentially rely on a report/letter dated July 10,

2017 from Jordan D. Yuelys, Esq. to Michael A. Kimm, Esq., as Plaintiffs' counsel (the "Yuelys

Report").  Mr. Yuelys states that the Plaintiffs retained him "to serve as a legal malpractice

expert concerning Samuel Ahne, Esq., and his representation of Jae Ho Lee in the acquisition of

the business known as 'Basic Food Groups, LLC,' in December 2012." *Id*. at 1.   In substance,

in his report, Mr. Yuelys reproduces select portions of the SAC, deposition testimony and other

evidence (the source of which is not cited) and, without any factual or legal analysis, provides a

series of legal conclusions about the actions of Mr. Ahne at issue in the SAC.  He summarized

those conclusions, as follows:

> Based upon a review of the records and Mr. Ahne's deposition transcript, it
> is my opinion that Mr. Ahne had a three party conflict of interest; that the conflict
> between Cheol Min Kim's ongoing representation and Jae Ho Lee's new
> representation was direct; and that Mr. Ahne should not have represented anyone
> in the case. Had a new lawyer been allowed to represent Mr. Jae Ho Lee, Mr. Lee
> would not have purchased a business with little profit for $1.8 million. Mr. Lee
> expected to receive $200,000 to $400,00 yearly in salary or profits but this was
> unfeasible because the business simply did not generate the kind of profit to allow
> the owner to take any reasonable salary.

The sale should also have been structured as an Asset purchase to protect the Buyer and for his financial benefit. The term of the Lease should also have been extended to allow the Buyer to be secure in the amount of time he had to recoup his costs in purchasing the business and to enable him to sell it in the future.

All of Mr. Lee's and Basic's losses are directly, proximately and substantially caused by Mr. Ahne's failure to properly structure the purchase for Mr. Lee, to provide a Contract with customary and necessary terms and conditions to protect the Buyer, to provide a Contract with customary and necessary contingencies to protect the Buyer, to conduct due diligence; his failure to ensure the buyback agreement was properly worded; and his failure to be conflict-free in relation to the other participants in the case.

*Id.* at 16.   The Court attaches no weight to the Yuelys' Report as it (i) is devoid of factual or legal analysis, (ii) ignores the facts of this case including that Ahne was not retained to conduct diligence of the Acquisition and Financing, and that the structure of the Buy-Back Agreement was a deal point of Noah Bank and that Lee did not ask him to draft the Buy-Back Agreement in his favor, and (iii) does not address, at all, the standard of care that Ahne, as closing counsel, owed to Lee.   Thus, the Plaintiffs have failed to satisfy the general requirement imposed on them at summary judgment to provide expert testimony addressing the applicable duty of care. *See Barack v. Seward & Kissel, LLP*, No. 16CV9664, 2017 WL 4023141, at *3 (S.D.N.Y. Sept. 12, 2017) ("Expert testimony is 'normally needed to establish that the attorney' fell below this standard." (citing *Healy*, 918 N.Y.S.2d at 502)).   This is not a case in which the facts are "so egregious that a fact-finder on the current record could determine without recourse to expert testimony" that a breach of the applicable standard of care occurred. *Nobile v. Schwartz*, 265 F.Supp.2d at 290; *see also Kranis v. Scott*, 178 F.Supp.2d 330, 335 (E.D.N.Y. 2002) (exception reserved for "obviously negligent" conduct).   Moreover, the Yuelys Report is inadmissible to establish that Ahne's performance constituted malpractice since it is the Court's function to make that determination.   *Diamond v. Salvan,* 78 A.D.3d 407, 408 (1st Dept. 2010) ("[T]he

opinion offered by . . . [a] legal malpractice expert is improper since it is the function of the

court to determine whether defendant's performance constituted malpractice.") (citing *Russo v.*

*Feder, Kaszovitz, Isaacson, Weber, Skala & Bass,* 301 A.D.2d 63, 68–69, 750 N.Y.S.2d 277 (1st

Dep't 2002) ("expert witnesses should not ... offer opinion as to the legal obligations of parties

...; that is an issue to be determined by the trial court. Expert opinion as to a legal conclusion is

impermissible") (internal quotation marks omitted).

    The evidence shows that Ahne performed the services that Lee requested him to perform

in connection with the Acquisition and Financing transactions.  The Plaintiffs have failed to

demonstrate that, on the uncontested facts of this case, a reasonable jury could find that Ahne's

actions fell below the standard of care that Ahne, as closing counsel, owed to Lee.  They have

failed to adduce any facts demonstrating that Ahne was negligent in his representation of Lee.

*See Portus Singapore PTE LTD v. Kenyon & Kenyon LLP*, 449 F.Supp.3d 402, 415 (S.D.N.Y.

2020) (noting that there is no negligence when a lawyer performs under an agreement but fails to

advise the client on a matter that falls outside the scope of the agreement).  In this light, Ahne's

alleged "trilateral" representation of Lee, Kim and Noah Bank does not support Lee's

malpractice claim.  First, it is undisputed that Ahne disclosed his past dealings with Kim and

Noah Bank to Lee and Lee raised no objections.  Ahne Depo. Tr. 24:1-22; 44:6-7; 45:14-17;

46:12-25; 47:1-18; 207:13-21.  Moreover, it is settled that the mere fact that Ahne did not obtain

a written, signed waiver from Lee, without more, does not by itself establish a legal malpractice

cause of action.  "A 'conflict of interest, even if a violation of the Code of Professional

Responsibility, does not by itself support a legal malpractice cause of action.'"  *Stonewell Corp.*

*v. Conestoga Title Ins. Co.,* 678 F.Supp.2d 203, 211-12 (S.D.N.Y. 2010) (quoting *Sumo*

*Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C.*, 278 A.D.2d 169, 719

21

N.Y.S.2d 223 (1st Dep't 2000)); *see also  Fletcher v. Boies, Schiller & Flexner, LLP*, 140

A.D.3d 587, 587 (1st Dep't 2016) ("In any event, the violation of a disciplinary rule, without

more, is insufficient to support a legal malpractice cause of action.");  *Cohen v. Kachroo*, 115

A.D.3d 512, 513 (1st Dep't 2014) ("To the extent that plaintiff seeks to allege malpractice based

on a violation of the New York Rules of Professional Conduct, such an alleged violation does

not, without more, support a malpractice claim.").

Accordingly, the Court grants the Ahne Defendants' motion for summary judgment

dismissing Count 3 of the Complaint.

Count 5: Breach of Agreement and Implied Covenant of Good Faith

Plaintiffs allege Ahne breached the covenant of good faith and fair dealing, implied in the

contract between Plaintiffs and Ahne, through Defendants' acts, omissions, and breaches. SAC ¶

148.   "Under New York law, a duty of good faith and fair dealing is implied in every contract, in

which in every contract 'there is an implied undertaking on the party of each party that he will

not intentionally and purposely do anything to prevent the other party from carrying out the

agreement on his part.' " *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F.Supp.3d

16, 37 (S.D.N.Y. 2017), *aff'd*, 712 F.App'x 85 (2d Cir. 2018) (quoting *Chemical Bank v. Stahl*,

272 A.D.2d 1, 14 (1st Dep't 2000)). Although the covenant does not include any obligation

inconsistent with the terms of the contractual relationship, it includes promises that a "reasonable

person in the position of the promisee would be justified in understanding were included" in the

contract, that "neither party shall do anything which will have the effect of destroying or injuring

the right of the other party to receive the fruits of the contract," and, when the contract involves

the exercise of discretion, that the party promises "not to act arbitrarily or irrationally in

exercising that discretion." *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384 (N.Y. 1995)

22

(citations omitted); *see also 1357 Tarrytown Road Auto, LLC v. Granite Props., LLC,* 37

N.Y.S.2d 341, 343 (2d Dep't 2016) ("[N]o obligation may be implied that would be inconsistent

with other terms of the contractual relationship.").

Courts applying New York law have long recognized that the elements of such a claim

are similar to such causes of action for breaches of duties of care, in that the tort requires the

existence of a duty, breach of that duty, causation, and damages. *See Benihana of Tokyo, LLC*,

259 F.Supp.3d at 37; *see also Pastor v. Woodmere Fire Dist*., No. 16 Civ. 892 (ADS), 2016 WL

6603189, at *7 (E.D.N.Y. Nov. 7, 2016) (citation omitted).  As such, causes of action for breach

of fiduciary duty, legal malpractice, and breach of the implied covenant of good faith and fair

dealing are duplicative of each other. *See, e.g., Latin Am. Fin. Group, Inc. v. Pareja*, No. 04 Civ.

10082 (DLC), 2006 U.S. Dist. LEXIS 48964, at *20 (S.D.N.Y. July 19, 2006) ("New York

courts typically view claims for breach of fiduciary duty and breach of contract as duplicative of

a legal malpractice claim."); *Flutie Bros. LLC v. Hayes*, No. 04 Civ. 4187 (DAB), 2006 U.S.

Dist. LEXIS 31379, at *7–8 (S.D.N.Y. May 18, 2006); *Perry v. McMains*, No. 09 CIV. 2154

(JSR), 2010 WL 3034421, at *4 (S.D.N.Y. July 27, 2010).

Plaintiffs' claim for breach of the covenant of good faith and fair dealing is premised on

the same alleged facts of acts, omissions, and breaches on the part of the Ahne Defendants and

seeks relief identical to that sought in Count 3 of the Complaint. Accordingly, the breach of

covenant of good faith and fair dealing claim is duplicative of the malpractice claim and must be

dismissed. *See Nevelson v. Carro, Spanbock, Kaster & Cuiffo*, 290 A.D.2d 399, 400 (1st Dep't

2002) (dismissing the redundant claims for breach of contract and breach of fiduciary duty,

which are predicated on the same allegations and seek relief identical to that sought in the

malpractice cause of action); *see also Palmeri v. Willkie Farr & Gallagher LLP*, 156 A.D.3d

564, 567, 69 N.Y.S.3d 267 (1st Dep't 2017) (affirming the dismissal of plaintiff's claims for

gross negligence, breach of contract, and breach of the implied covenant of good faith and fair

dealing as duplicative of his legal malpractice claim, given that they are all based on the same

facts and seek the same relief); *Sun Graphics Corp. v. Levy, Davis & Maher, LLP*, 94 A.D.3d

669, 669, 943 NY.S.2d 464 (1st Dep't 2012) (causes of action for breach of contract, breach of

fiduciary duty, and negligent misrepresentation are redundant of the legal malpractice claim,

since they arise from the same allegations and seek identical relief).

Accordingly, the Court grants the Ahne Defendants' motion for summary judgment

dismissing Count 5 of the Complaint.

## Conclusion

Based on the foregoing, the Ahne Defendants have demonstrated that they are entitled to

judgment dismissing Counts 3 and 5 of the Complaint as a matter of law. Accordingly, the Court

GRANTS the Motion.

IT IS SO ORDERED.

Dated: December 18, 2020
       New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge.

24