UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re Basic Food Group, LLC,   Chapter 7

                       Debtor.   Case No.: 15-10892 (JPM)

-------------------------------------------------------------x

Jae Ho Lee, Soyoun Park and Basic Food Groups, LLC,

                                   Adv. Pro. No. 15-01119 (JPM)

                       Plaintiffs,

      – v –

Ahne Law, P.C., Samuel Ahne, and Cheol Min Kim,

                     Defendants.

-------------------------------------------------------------x

**M**EMORANDUM **O**PINION AND **O**RDER ON **P**LAINTIFFS' **M**OTION FOR **J**UDGMENT AS A **M**ATTER OF **L**AW AFTER **T**RIAL **(JNOV)** AND/OR **N**EW **T**RIAL **U**NDER **F**EDERAL **R**ULES **50(A) & 59**


*A P E A R A N C E S:*

**KIMM LAW FIRM**
*Counsel for Jae Ho Lee, Soyoun Park and Basic Food Groups, LLC*
333 Sylvan Avenue, Suite 106
Englewood Cliffs, New Jersey 07632
By:   Michael S. Kimm

**THE BASIL LAW GROUP, P.C.**
*Counsel for Ahne Law, P.C., Samuel Ahne, and Cheol Min Kim*
125 West 31st Street
Suite 19-B
New York, New York 10001
By:   Robert J. Basil
        David A. Cohen

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**[1]

This is an adversary proceeding related to the bankruptcy case *In re: Basic Food Group, LLC,* Case No. 15-10892 (July 1, 2015). Before the Court is the *Motion for Judgment as a Matter of Law after Trial (JNOV) and/or New Trial Under Federal Rules 50(a) & 59* filed by Plaintiffs Basic Food Groups, LLC (the "Debtor"), Jae Ho Lee ("Mr. Lee"), and Soyoun Park ("Ms. Park," and collectively with Mr. Lee and the Debtor, "Plaintiffs"). [Doc. 319]; [*see also* Doc. 320-1] (Plaintiffs' *Memorandum of Law,* and collectively with [Doc. 319], the "Motion"). The Motion argues that "this Court should grant judgment as a matter of law (JNOV) and/or new trial on damages" following the jury verdict rendered against Plaintiffs on Friday, May 24, 2024. [*See* Doc. 320-1, p. 12]; [*see also* Doc. 318] (the jury's completed Verdict Form).

Filed in response to the Motion is the *Memorandum of Law Opposing Plaintiffs' Motion for Judgment as a Matter of Law after Trial (JNOV) and/or New Trial* (the "Opposition") filed by defendants Ahne Law, P.C. and Samuel Ahne ("Mr. Ahne," and collectively with Ahne Law, P.C., "Defendants"). [Doc. 325]. The Opposition argues generally that "the Court should deny each of Plaintiffs' motions in their entirety and affirm the jury's verdict in favor of the [] Defendants." *Id.* at p. 7.

After careful consideration, and for the reasons set forth below, the Court finds that Plaintiffs are not entitled to either judgment as a matter of law or a new trial. Accordingly, the Motion is a denied.

---

[1] Unless otherwise specified, references to "[Doc. __]" are to filings entered in the adversary proceeding *Jae Ho Lee, et al. v. Ahne Law, P.C., et al.*, Case No. 15-01119 (July 1, 2015). References to "[Ch. 11 Dkt., Doc. __] are to filings entered in the bankruptcy case *In re: Basic Food Group, LLC*, Case No. 15-10892 (April 10, 2015).

References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York.

1

**BACKGROUND**

The Debtor is a limited liability corporation organized under the laws of New York. [Doc. 1-38, p. 2, hereinafter "Plaintiffs' Second Amended Complaint"]. The Debtor was originally owned by Cheol Min Kim ("Mr. Kim"), who operated the Debtor as a deli and café business in midtown Manhattan. [Mr. Ahne's *Local Rule 56.1 Statement of Uncontested Facts*, hereinafter "Def. 56.1 Statement," Doc. 200-1, p. 1]; [Plaintiffs' *Response to Defendant's Alleged Statements of Material, Undisputed Facts*, hereinafter "Pls. 56.1 Response," Doc. 204-1, p. 1]. Mr. Kim owned a similar business in Hoboken, New Jersey. [Def. 56.1 Statement, Doc. 200-1, p. 1]; [Pls. 56.1 Response, Doc. 204-1, p. 1]. After operating the Debtor for roughly two-and-a-half years (from 2009 to 2012), Mr. Kim decided to sell the Debtor, ostensibly to dedicate more time towards his Hoboken business. [*See* Kim deposition testimony, hereinafter "Kim Deposition," Doc. 98-4, p. 13]; [*see also* Doc. 285, pp. 106, 107, 116, 157] (where, at a bench trial held December 13, 2023, Mr. Kim testifies that, at the time of the sale, he wanted to "stay in touch [with] Jersey more than New York" because he resided in New Jersey with his four children).

Mr. Kim began searching for a buyer for the Debtor in the fall of 2012. [Def. 56.1 Statement, Doc. 200-1, p. 2]; [Pls. 56.1 Response, Doc. 204-1, p. 1]. Mr. Lee, a years-long friend of Mr. Kim, agreed to purchase the Debtor sometime in late 2012, and the parties closed the deal that December.[2] [*Opinion and Order* issued in this case by the United States District Court for the Southern District of New York on September 1, 2022, hereinafter the "District Court Order," Doc. 239, p. 2]; [*see also* Lee deposition testimony, hereinafter "Lee Deposition," Doc. 278, p. 117]. The sale was financed primarily by a loan from Noah Bank (acting in large part through its agent,

---

[2] At the time he acquired the Debtor, Mr. Lee owned and operated a similar deli-café business in Manhattan. [*See* Lee Deposition, Doc. 278, p. 115]; *see also id.* at p. 131 (where Mr. Lee notes that, prior to immigrating to the United States, he operated a restaurant in Korea for roughly a year-and-a-half).

2

Irvin Chai ("Mr. Chai")) and facilitated by loan and sale documents prepared by Mr. Ahne, who was retained as Mr. Lee's attorney for the purposes of the sale. [*See generally* Noah Bank lending agreement, Doc. 24-1]; [Def. 56.1 Statement, Doc. 200-1, p. 4]; [Pls. 56.1 Response, Doc. 204-1, p. 2].

As a condition to the loan, Noah Bank required Mr. Lee to sign an agreement (the "Buyback Agreement") that provided Mr. Kim an option to buy the Debtor back "at the same terms and conditions sold to [Mr.] Lee . . . ." [*See* Second Amended Complaint, Doc. 1-38, p. 38]; [*see also* Doc. 325-2, pp. 219–220] (transcript from the jury trial held with respect to the malpractice claim against Mr. Ahne, hereinafter "Trial Transcript"). The Buyback Agreement read in its entirety:

> Whereas parties have entered into an agreement whereby Cheol M[] Kim and Si Won Kim are transferring all their interest in Basic Food Groups, LLC. to Jae Ho Lee;
>
> Whereas Cheol M. Kim (hereinafter "seller") desire to retain the option of buying back all the shares of Basic Food Groups, LLC. for any reason;
>
> WHEREFORE; Parties Cheol M. Kim and Jae Ho Lee hereby agrees as follows:
>
> 1. That Jae Ho Lee hereby grants Cheol M. Kim the option of buying back all the units of Basic Food Groups, LLC. at the same terms and conditions sold to Jae Ho Lee;
>
> 2. Cheol M. Kim must provide 30 days written notice to exercise such option.
>
> 3. Said option shall remain personal to Cheol M. Kim and is not transferable;
>
> 4. This Agreement shall be construed within the Laws of the state of New York and further may not be modified unless in writing.

[Second Amended Complaint, Doc. 1-38, p. 38]. The Debtor's business performed poorly following the closing. [*See* Lee Deposition, Doc. 278, pp. 117–118] (where Mr. Lee testifies that the Debtor "was a store [that] was not profitable at all"); [Second Amended Complaint, Doc. 1-38, p. 78] (where Plaintiffs allege that the Debtor "operat[ed] at a loss because the business revenue

3

failed to cover basic operating expenses"). Three years after the sale, Mr. Lee and the Debtor defaulted on the Noah Bank loan, and the Debtor thereafter filed a voluntary petition for chapter 11 relief on April 10, 2015. [*See* District Court Order, Doc. 239, p. 1]; [*see also* Ch. 11 Dkt., Doc. 1].

On July 1, 2015, the United States District Court for the Southern District of New York referred this adversary proceeding to this Court in accordance with the Amended Standing Order of Reference, M-431 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). [Doc. 1]. Plaintiffs' Second Amended Complaint asserts a number of claims precipitated by Mr. Lee's purchase of the Debtor, including:

(i)  claims arising under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, *et seq.*, against various defendants, including Mr. Kim, [*see* Second Amended Complaint, Doc. 1-38, pp. 66–75];

(ii) a claim against Mr. Kim for fraud in the inducement, *see id.* at pp. 78–79; and

(iii) claims against Mr. Ahne and his firm for malpractice[3] relating to Mr. Ahne's representation of Mr. Lee during the December 2012 closing, *id.* at pp. 75–76.

With respect to the claim asserted against Defendants, Plaintiffs' Second Amended Complaint alleges the following:

> Despite the fact that plaintiffs were becoming obigated [sic] to $1.8 million in notes, loans, obligations, and other obligations, and despite the fact that plaintiffs may be infusing their own funds into the business scenario, defendant Ahne failed to provide a minimal degree of protection for plaintiffs. On the contrary, as discussed above, defendant Ahne *failed to engage in any due diligence*, any review of important legal instruments, failed to provide any advice, failed to meet with the clients, failed to protect them at all. Even worse defendant Ahne created legal instruments that were antagonistic to and contrary to the legal and financial interests

---

[3] Although Plaintiffs' Second Amended Complaint styles the claim against Defendants as a "breach of fiduciary duty" claim, [*see* Second Amended Complaint, Doc. 1-38, pp. 75–76], both the parties and the Court have treated that claim as one for legal malpractice. [*See, e.g.*, Doc. 256, p. 6] (Plaintiffs' *Supplemental Memorandum of Law in support of Single Consolidated Trial in the Bankruptcy Court*, where Plaintiffs describe their claim against Mr. Ahne as one for malpractice); [Pretrial Order, Doc. 313, pp. 2, 5, 7, 30]; [Doc. 210, p. 14] (the Court's *Memorandum, Decision and Order*, hereinafter "December Order," observing that "[i]n the attorney liability context, a breach of fiduciary duty claim is governed by the same standard as legal malpractice").

4

of each plaintiff.  Defendant Ahne caused them to sign and obligate themselves to numerous financial and legal obligations; *intentionally created a buy-back agreement* that *favored the wrong party*; and deliberately avoided protecting plaintiffs at all.

[Second Amended Complaint, Doc. 1-38, pp. 75–76] (emphasis added); [*see also* Doc. 313, p. 20] (the parties' *Joint Pretrial Order*, hereinafter the "Pretrial Order," where Plaintiffs claim that Defendants "were negligent in drafting the language of the Buyback Agreement in such a manner as to enable only Cheol Min Kim to exercise the option, rather than permitting Jae Ho Lee to require a buyback by Cheol Min Kim.  Had Ahne Defendants drafted the Buyback Agreement properly . . . Jae Ho Lee would have immediately compelled a buyback and he would have been made whole").

On December 18, 2020, the Court issued the December Order, which granted summary judgment with respect to the pending claims against Defendants. [*See generally* December Order, Doc. 210].  The December Order found, *inter alia*, that by the time Mr. Lee retained Mr. Ahne:

> Lee and Kim had [already] reached [a] final agreement on the terms of the Acquisition and the terms of the Financing, and Noah Bank had approved Lee's loan application . . . [and] Ahne's first exposure to those transactions was on November 26, 2012 . . . Ahne, in his capacity as Lee's closing counsel, [subsequently] obtained a copy of the lease for Basic Food's business premises, as well as Basic's corporate entity documents, reviewed them, generated a lease review summary document, provided his lease review summary to Lee via email on November 28, 2012, and requested a meeting [with Mr. Lee] . . . There is no evidence in the record that Ahne failed to perform any of the tasks Lee requested him to perform in connection with the closing.  Neither Kim nor Lee testified that either of them had intended for the Buy-Back Agreement to be drafted to vest Lee with a put option . . . [and] neither of them testified that they had ever discussed the idea of a buy-back or negotiated the terms of the Buy-Back Agreement, let alone agreed that it should inure to Lee's benefit. Indeed, the inclusion of the Buy-Back Agreement was identified as an essential element of the Noah Bank Loan, and was

5

not included to protect the interests of either the buyer or seller, but to protect the interests of Noah Bank.[4]

*Id.* at pp. 16–18; *see also id.* at p. 18 (concluding that "Defendants have met their burden of demonstrating that the uncontroverted evidence does not support Plaintiffs' assertion that Ahne was negligent in his representation of the Plaintiffs"). Plaintiffs then appealed the December Order. [*See* Plaintiffs' *Notice of Appeal*, Doc. 211].

The December Order was largely affirmed on appeal. [*See generally* District Court Order, Doc. 239]. However, with respect to claim related to the Buyback Agreement, the District Court Order found that although "most of these alleged breaches [by Mr. Ahne] do not raise material issues of fact warranting [] reversal . . . construing the facts in the light most favorable to Plaintiffs, a reasonable juror could find that the Ahne Defendants breached their fiduciary duty in connection with the buyback agreement." *Id.* at p. 10. The District Court thereafter reversed the grant of summary judgment as to the Buyback Agreement and remanded the case to this Court for proceedings consistent with that Order. *Id.* at p. 19.

The Court presided over a jury trial[5] on Plaintiffs' malpractice claim against Defendants beginning on May 21, 2024, and ending on May 24, 2024. [*See generally* Trial Transcript, Doc. 325-2]. During the trial, the jury heard testimony from Mr. Ahne, Mr. Kim and from Mr. Chai,

---

[4]   That Court notes that, with the exception of the instant malpractice claim against Defendants, all of the claims asserted in Plaintiffs' Second Amended Complaint have been dismissed. [*See* Doc. 116, p. 43] (*Memorandum Decision and Order* from this Court dated October 31, 2018, dismissing, *inter alia*, Plaintiffs' RICO claims); [Doc. 330] (the Court's *Memorandum Opinion and Order* issued September 18, 2024, dismissing the fraud in the inducement claim asserted against Mr. Kim).

[5]   Although Plaintiffs' Second Amended Complaint requested a jury trial, [*see generally* Second Amended Complaint, Doc. 1-38], a bankruptcy court may only properly hold a jury trial "with the express consent of all the parties." 11 U.S.C. § 157(e). The parties to this case so consented. [*See* Doc. 242-1, p. 2] (where, in a joint letter to the Court dated August 23, 2022, Defendants request "a jury trial for [Mr.] Ahne"); *id.* at p. 1 (where Plaintiffs indicate "their preference for trial by jury"); [Pretrial Order, Doc. 313, p. 6] (where the parties "consent t[o] [this Court] [] enter[ing] final orders or judgments as an Article III [judge] . . . ."); [Doc. 257, pp. 7–8] (where Defendant indicates that the parties consent "a 'normal' jury trial [before this Court] consistent with the Seventh Amendment . . . [with] the jury [] render[ing] a binding verdict [] upon claims lodged against [Mr.] Ahne"). .

who represented Noah Bank throughout the sale of the Debtor. *See id*. Mr. Lee's testimony was also introduced via deposition.[6] [*See* Lee Deposition, Doc. 278].

The jury returned a verdict for Defendants, finding that Mr. Ahne "exercise[d] that degree of care, skill and diligence commonly exercised by a member of the legal profession [] with respect to his drafting of the Buyback Agreement in December of 2012[.]" [*See* the *Verdict Form* completed by the jury, Doc. 318, p. 1]; [*see also* the Court's Order Preserving Documents from Jury Trial Conducted from May 21–May 24, 2024, enumerating certain documents from the trial, Doc. 321]; [Jury Instructions, Doc. 321-2]. The Court and the Clerk of Court thereafter entered judgment in favor of Defendants and authorized their recovery of costs. [*See* the Judgment signed by the Court and the Clerk of Court, Doc. 322].

Plaintiffs filed the instant Motion on June 13, 2024. [Motion, Doc. 320]. The Motion makes two arguments with respect to the jury's verdict:

(i) first, that Plaintiffs are entitled to judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure because Mr. Ahne "knew the Buyback Agreement was required to protect Jae Ho Lee [but] it was not prepared in a manner that protected Jae Ho Lee, but rather his other client Cheol Min Kim," *id*. at p. 9; and

(ii) second, that the Court should "otherwise grant [a] new trial on damages alone" under Rule 59 of the Federal Rules of Civil Procedure because "liability has been effectively admitted by [Mr.] Ahne," *id*. at pp. 9–11 (describing the jury's findings as being "simply wholesale wrong").

Defendants oppose both arguments. [*See* Opposition, Doc. 325, pp. 15–23] (arguing that Plaintiffs' request for a judgment as a matter of law should be denied because, *inter alia*, Plaintiffs have "failed to carry their burden to establish that the jury's verdict was [] 'wholly without legal support'"); *id*. pp. 24–31 (arguing that Plaintiffs' request for a new trial under Rule 59 should be

---

[6] Mr. Lee died on April 30, 2018. [*See* Doc. 313, p. 6]. This action is being prosecuted by Ms. Park, his widow, on behalf of his estate and by the chapter 7 Trustee on behalf of the estate of the Debtor. [District Court Order, Doc. 239, p. 1 n.1].

7

denied because, *inter alia*, "Plaintiffs have failed to prove that the jury's verdict was clearly erroneous or was a miscarriage of justice"). Plaintiffs have not filed a reply.

## ANALYSIS

### I. JURISDICTION

Federal courts have "original but not exclusive [subject matter] jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b). Proceedings "aris[e] under" title 11 where a party "clearly invoke[s] substantive rights created by federal bankruptcy law." *Panthers Cap., LLC v. Jar 259 Food Corp*, 2023 WL 4823942, at *2 (E.D.N.Y. Mar. 6, 2023) (citing *In re Robert Plan Corp*., 777 F.3d 594, 596 (2d Cir. 2015)). Proceedings "arise in" a title 11 case where a party asserts "claims that are not based on any right expressly created by [the Bankruptcy Code], but nevertheless, would [not exist] outside of the bankruptcy." *Id.* (citing *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010)); *see also In re Grupo Aeromexico,* 2023 WL 6206093, at *11 (Bankr. S.D.N.Y. Sept. 22, 2023) ("While the [underlying state law action] does not directly implicate rights under title 11, the claims sold to Plaintiffs would not exist except for Debtors' bankruptcy case."). If a proceeding does not "arise under" title 11 or "arise in" a title 11 case, that proceeding may nevertheless "relate to" a case under title 11 if "th[at] action's outcome might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 339–340 (2d Cir. 2018).

Here, Plaintiffs' malpractice claim arises solely under law of the state of New York, and this adversary proceeding predates this bankruptcy. [*See generally* Doc. 1]; [Second Amended Complaint, Doc. 1-38]. For these reasons, the Court possesses neither "arising under" nor "arising in" jurisdiction over the Plaintiffs' claim within the meaning of 28 U.S.C. § 1334(b). [*See* Doc. 115, p. 3] (the Court's prior *Memorandum Decision and Order* entered October 31, 2018).

8

However, the Court has already found that "the claims asserted by the Debtor against the Ahne Defendants fall within the scope of the Court's non-core related-to jurisdiction because the resolution of those claims will impact the value of the Debtor's estate." [December Order, Doc. 20, p. 4] (citing *Parmalat Capital Fin., Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) and *Robinson v. Daley (In re Daley)*, 224 B.R. 307, 313 (Bankr. S.D.N.Y. 1998)). With respect to the claims asserted by Ms. Park and Mr. Lee, the Court has likewise found that "it has supplemental jurisdiction to adjudicate [those] claims against [Defendants]" because those claims "share a common nucleus of operative facts as the claims of the Debtor . . . and [because] it would not be judicially economical to try these overlapping matters in different proceedings." *Id.* at pp. 5–6. Subject matter jurisdiction thus exists over Plaintiffs' claims against Defendants.

## II.   JUDGMENT AS A MATTER OF LAW

In this case, the Motion takes issue with the jury's answer to the question of Mr. Ahne's alleged breach.[7] More specifically, Plaintiffs argue:

> [E]veryone testified that the Buyback Agreement was to protect Jae Ho Lee and the right to exercise this option was to be held by Jae Ho Lee, there is no room to debate whether the form, as ultimately prepared by Ahne, was properly prepared or not, and this does not require any sophisticated legal opinion. The form was incorrectly prepared and that resulted in Jae Ho Lee's inability to have the buy-back option exercised at all . . . Because Ahne's admissions were graphic and dispositive [on this point], there was nothing to debate for the jury. When the evidence is viewed most favorably to Ahne, his testimony must be taken at face value: [h]e knew the Buyback Agreement was required to protect Jae Ho Lee; it was not prepared in a manner that protected Jae Ho Lee, but rather his other client Cheol Min Kim.

---

[7]   The Verdict Form contained the following interrogatory:

Do you find, by a preponderance of the evidence, that Samual Ahne and Ahne Law, P.C. failed to exercise that degree of care, skill and diligence commonly exercised by a member of the legal profession, solely with respect to his drafting of the Buyback Agreement in December of 2012?

[Doc. 318, p. 1]. The jury responded to this interrogatory by checking the box indicating "No." *Id.*

9

[Motion, Doc. 320-1, pp. 8–9]. Defendants, however, maintain that "Plaintiffs are procedurally barred from raising a 50(b) motion on any grounds because Plaintiffs failed to make a motion for judgment as a matter of law under Rule 50(a) prior to the submission of the case to the jury." [Response, Doc. 325, pp. 15] ("Plaintiffs had more than sufficient opportunity to move timely for judgment as a matter of law on the issues that are now the bases for their Rule 50(b) motion."). With respect to the merits of the Motion, Defendants argue further that "Plaintiffs [] fail[] to acknowledge any of the copious evidence supporting the jury's verdict . . . [and] Plaintiffs [otherwise] failed to present any evidence regarding the 'degree of care, skill and diligence commonly exercised by a member of the legal profession' with respect to Ahne's drafting of the Buyback Agreement." *Id.* at pp. 19–20.

The Court agrees with Defendants. As a threshold matter, Rule 50(a)[8] provides that "at any time before the case is submitted to the jury," a court may "grant a motion for judgment as a matter of law against [a] party" if that party "has been fully heard on a[] [dispositive] issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for th[at] party on that issue . . . ." Where a party makes a timely motion for judgment as a matter of law in accordance with Rule 50(a), Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

---

[8] Rule 50(a) contemplates only motions for judgment as a matter of law that are made "at any time before the case is submitted to the jury." *See* Fed.R.Civ.P. 50(a)(2). Because the instant Motion arises post-verdict, it is appropriately considered in the context of Rule 50(b).

10

*See McCardle v. Haddad,* 131 F.3d 43, 50–51 (2d Cir. 1997). Rule 50(b) thus requires a pre-verdict motion for judgment as a matter of law before a post-verdict motion can be heard. *See id.* ("[A] posttrial motion for JMOL can properly be made *only if*, and to the extent that, such a motion specifying the same grounds was made *prior to the submission of the case* to the jury.") (emphasis added); *Toliver v. New York City Dept. of Corrections*, 202 F. Supp. 3d 328, 336 (S.D.N.Y. 2016) ("[A] party may only move for judgment as a matter of law following a trial 'if it sought such relief *before the jury retired to deliberate*' and the post-trial motion is based on 'those grounds 'specifically raised in the prior motion for [judgment as a matter of law].'") (emphasis added).[9] Plaintiffs did not move under Rule 50(a) prior to the jury's deliberation, [*see generally* Trial

---

[9] *See also Zhiwen Chen v. Cnty. of Suffolk,* 927 F.Supp. 2d 58, 63 (E.D.N.Y. 2013) (collecting cases and observing that "[w]here a moving party fails to move for judgment as a matter of law under Rule 50(a) before the case is submitted to the jury, courts in this Circuit routinely deny a Rule 50(b) motion as procedurally improper"); Fed. R. Civ. P. 50(b) advisory committee's note to 2006 amendments ("Because the Rule 50(b) motion is only a renewal of the prevedict motion, it can be granted only on grounds advanced in the prevedict motion."); *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) ("The law is pellucid that a party's failure to move under Rule 50(a) has consequences."); *Britt v. Garcia*, 457 F.3d 264, 268 n.2 (2d Cir. 2006); *Acosta v. Honda Motor Co.*, 717 F.2d 828, 831 (3d Cir. 1983) ("Rule 50(b) is essentially a notice provision that, among other functions, protects the important seventh amendment right of trial by jury. A motion for a judgment n.o.v. must be preceded by a motion for a directed verdict sufficiently specific to afford . . . an opportunity to cure possibly technical defects in proof . . . .").

11

Transcript, Doc. 325-2], and their request for a post-verdict judgment matter of law is therefore procedurally barred.[10]

Even if Plaintiffs could seek relief under Rule 50(b), that relief would be unavailable. The Second Circuit has instructed:

> A judgment [as a matter of law] may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it] . . . [A motion under Rule 50] should be granted only if the court can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party. The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury.

*Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112–113 (2d Cir. 2015) (internal quotations omitted). Put simply, "[j]udgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d

---

[10] The Court notes that Rule 59(e) "authorizes a district court to 'alter or amend [a] judgment to correct a clear error of law or prevent injustice.'" *JONATHAN NNEBE, et al., Plaintiffs, v. MATTHEW DAUS, et al., Defendants.*, 2024 WL 4182600, at *3 (S.D.N.Y. Sept. 13, 2024) (citing *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)).

However, "a party may not 'obtain judgment as a matter of law under Rule 59(e) after failing to comply with the carefully crafted structure and standards of Rules 50 and 51' . . . [meaning that] a party cannot obtain judgment as a matter of law under Rule 59(e) on grounds of insufficient evidence *if the party did not make a timely motion under Rule 50(a)*." *Id.* (emphasis added) (citing *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014)); *see also* 11 Wright & Miller, *Federal Practice & Procedure* § 2810.1 (3d ed. 2024) ("[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."); *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n. 5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"). A post-verdict motion for judgment as a matter of law under Rule 59(e) is thus permitted (if at all) only in "unusually egregious circumstances . . . ." *See ING Glob.,* 757 F.3d at 97 ("Permitting a party out of compliance with Rules 50 and 51 to prevail under Rule 59(e) would render those Rules, which are basic to the conduct of federal trials, essentially superfluous. We are not inclined to endorse such a result except *perhaps* in unusually egregious circumstances . . . .") (emphasis in original).

Plaintiffs have not moved here under Rule 59(e), [*see generally* Motion, Doc. 320-1], and the Court will therefore not examine that basis for relief.

12

276, 289 (2d Cir. 1998). Where a party moves for judgment as a matter of law on a ground that was not raised prior to the verdict, such a motion may only be granted "if necessary to prevent 'manifest injustice,'" which exists only where a verdict is "wholly without legal support." *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir. 1986); *Hutchinson v. Grace*, 2022 WL 1154347, at *2 (S.D.N.Y. Apr. 19, 2022); *see also Anderson v. Osborne,* 2020 WL 6151249, at *1 (S.D.N.Y. Oct.

20, 2020) ("'As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted . . . unless that action is required to prevent manifest injustice.'").[11]

In this case, the evidence—or lack thereof—presented to the jury was clearly sufficient to justify a ruling in favor of Defendants. Both Mr. Chai and Mr. Ahne testified that the Buyback

---

[11] The origin of the "manifest injustice" exception is unclear, as neither the text nor the comments to Rule 50 permit a post-verdict motion for judgment as a matter of law absent a preverdict motion under Rule 50(a). *See supra*, n.10. The Supreme Court opinions addressing the issue would seem to foreclose the possibility. *See Johnson v. New York, N.H. & H.R. Co.,* 344 U.S. 48, 51–52 (1952) ("Respondent [] argues that a trial judge's express reservation of decision on motion for a directed verdict relieves a party from any duty whatever under 50(b) to make a motion for judgment after verdict. This contention not only flies in the teeth of the rule's unambiguous language but if sustained would undermine safeguards for litigants . . . ."); *id.* at 51 ("The rule carefully sets out the steps and procedures to be followed by the parties as a prerequisite to entry of judgments notwithstanding an adverse jury verdict."); *id.* at 53 (describing Rule 50's time requirements as being "an *essential part of the rule,* firmly grounded in principles of fairness") (emphasis added); *Neely v. Martin K. Eby Const. Co.,* 386 U.S. 317, 324–25 (1967) ("In *Johnson* [], this Court held that a verdict loser's motion to 'set aside' the jury's verdict did not comply with Rule 50(b)'s requirement of a timely motion for judgment n.o.v. and therefore that the Court of Appeals could not direct entry of judgment n.o.v.") (internal citations omitted).

In the Second Circuit, the earlier cases considering an untimely Rule 50(b) motion permitted only the granting of a new trial rather than a judgment as a matter of law. *See, e.g., Oliveras v. Am. Exp. Isbrandtsen Lines, Inc.,* 431 F.2d 814, 817 (2d Cir. 1970) ("[H]ad counsel first moved for a directed verdict and then moved for a verdict n.o.v., he would be entitled to an entry of judgment in his favor. This relief is denied him, but we consider it fair to remand for a new trial on the merits."); *Sojak v. Hudson Waterways Corp.,* 590 F.2d 53, 54–55 (2d Cir. 1978) ("Plaintiff did not move for a directed verdict pursuant to Rule 50(a) . . . [but] we are not powerless to grant relief. Where a jury's verdict is wholly without legal support, we will order a new trial in order to prevent a manifest injustice."); *Russo v. State of N. Y.,* 672 F.2d 1014, 1022 (2d Cir. 1982), *decision modified on reh'g sub nom. Russo v. State of New York,* 721 F.2d 410 (2d Cir. 1983) ("However, while [defendant's] failure properly to [sic] preserve his insufficiency of the evidence claim dissuades us from entering a judgment dismissing the complaint against him, it does not preclude us from granting [a new trial]."). Subsequent cases appear to have expanded this exception to permit the issuance of a judgment in favor of the movant, notwithstanding the untimeliness of the motion or the text of Rule 50. *See, e.g., Doctor's Associates, Inc. v. Weible,* 92 F.3d 108, 113–14, 117 (2d Cir. 1996) (reversing and remanding "with instructions to enter judgment for [p]laintiffs" because "injustice would result were [the court] not to 'reach the question of whether [defendant] proved his abuse of process claim'"); *Lore v. City of Syracuse,* 670 F.3d 127, 153 (2d Cir. 2012) ("As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted . . . unless that action is required in order to prevent manifest injustice."); *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 164 (2d Cir. 1998) (same); *Galdieri-Ambrosini v. Natl. Realty & Dev. Corp.,* 136 F.3d 276, 287 (2d Cir. 1998) (same); *see also Zhiwen Chen v. Cnty. of Suffolk,* 927 F. Supp. 2d 58, 64 (E.D.N.Y. 2013) ("[D]efendants' [sic] correctly note that even if there was a 'technical deficiency . . . the Second Circuit has determined that a District Court may entertain a Rule 50(b) motion even where a Rule 50(a) motion has not been made if it is necessary to prevent manifest injustice.'"); *Am. Natl. Fire Ins. Co. v. Mirasco, Inc.,* 451 F. Supp. 2d 576, 580–81 (S.D.N.Y. 2006) ("The only exception to the requirement of a pre-verdict motion arises where denial of judgment as a matter of law would result in 'manifest injustice.'").

The Court notes that the Second Circuit is not the only circuit to have adopted a justice-based exception to Rule 50(b). *See, e.g., B&B Hardware, Inc. v. Hargis Industries, Inc.,* 912 F.3d 445, 450 (8th Cir. 2018), *cert. denied,* 140 S. Ct. 218 (2019); *Calhoun v. Walmart Stores East, LP,* 818 F.App'x 899, 905 (11th Cir. 2020).

14

Agreement was explained to Mr. Lee before he provided his signature, both at and "well before" the closing.[12] [*See* Trial Transcript, Doc. 325-2, pp. 108–109, 113–114, 432–33]. Mr. Ahne also testified that, based upon his understanding of Noah Bank's loan requirements, the Buyback Agreement as-drafted was "a good agreement for Mr. Lee" because:

> if something went south, the bank would put pressure on Cheol Min Kim to buy [the Debtor] back regardless. If Jae Ho Lee had tanked the business south and Cheol Min Kim would not buy it, there would be no money to buy it unless the bank loaned him the money . . . [and] [it] was not a sellback agreement that the bank ordered. I took the form from the bank, and I drafted that agreement, and I still believe that was for the benefit of Mr. Lee. The bank was ready to help Mr. Lee.

*Id.* at pp. 113–17; *see also id.* at p. 112 ("[W]hen Mr. Lee picked me as his attorney . . . [Noah Bank] said we're going to give him a loan, and they're going to sell the business for this price. Your job is to draft the documents. And that's what I did . . . [but] I know who I was protecting."); *id.* at p. 450 ("[The parties] called me to a meeting in which the three of them were present, and they're the ones that told me the facts of the transaction: The amount, the Buyback Agreement . . . *all this was to enable Mr. Lee to get* [] *his dream store.*") (emphasis added). This was sufficient

---

[12] Notably, prior to the closing, Mr. Ahne emailed both the sale documents and a summary of their terms to Mr. Lee and offered to explain them to his client. [*See* Lee Deposition, Doc. 278, p. 126] ("Q: [] [W]hen you received the email, did you read it? A: I cannot remember clearly, but I think I did not read [it] in that much detail."). Notwithstanding Mr. Ahne's offer, Mr. Lee testified:

> Q: And is it your testimony that you have not seen any of the closing documents prior to the date of the closing?
> A: Yes.
> Q: Now, when you were at the closing for Basic Food Group, did you object to any of the closing documents?
> A No.
> Q: Did you ask any questions about the numbers or any of the language in the closing documents?
> A: No, no.
> Q: Did you ask for any of the portion of the closing documents to be explained to you or translated to you?
> A: No.

*See id.* at p. 138.

15

evidence for a jury to find that Mr. Ahne satisfied the duty he owed to his client. *See Schwartz v. Twin City Fire Ins. Co.,* 492 F. Supp. 2d 308, 317 (S.D.N.Y. 2007), *aff'd sub nom. Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135 (2d Cir. 2008) ("In considering a Rule 50(b) motion, a court should be deferential to the jury's role as the trier of fact.").

In addition, Plaintiffs did not present any evidence of the precise contours of Mr. Ahne's duty. While Plaintiffs argue emphatically that the Buyback Agreement "was not prepared in a manner that protected [Mr.] Lee," [*see* Motion, Doc. 320-1, p. 9], the only indication of a breach on the part of Mr. Ahne were the arguments of counsel and the conflicting evidence presented at trial.[13] For this reason, and because the evidence presented to the jury was sufficient for the jury to find that Mr. Ahne satisfied his duty of care, the jury's verdict was not "wholly without legal support." Thus, Plaintiffs' request for a judgment as a matter of law is denied.

### III. NEW TRIAL

Plaintiffs next argue that "[t]he Court should otherwise grant [a] new trial on damages alone, since liability has been effectively admitted by [Mr.] Ahne . . . ." [Motion, Doc. 320-1, pp. 9–11] ("Because the clear weight of the evidence was uniform and unidirectional, a new trial should be granted only on the issue of damages."). A damages-only trial would, however, require

---

[13]   The Court notes that an expert report was previously prepared by Plaintiffs in connection with the instant claim against Mr. Ahne, and the report provided that Mr. Ahne "fail[ed] to ensure the buyback agreement was properly worded . . . ." [*See* Doc. 187-1, p. 16] (the report of Jordan D. Yuelys). That report was the subject of two motions in limine by Defendants, [*see* Doc. 244, pp. 25–26]; [Doc. 274-1, pp. 6–7], and was subsequently excluded—without objection from Plaintiffs—at a hearing held on April 30, 2024. [*See* Doc. 294, p. 4] (Plaintiffs' *Memorandum of Law in Opposition of Defendant Ahne's Motion in Limine*, where Plaintiffs state that "Defendant's Motion in Limine [] is [m]oot" because Plaintiffs believe that "the question [of] whether the Buyback Agreement was negligently prepared is a [] question that does not require expert testimony").

Of course, as noted by the District Court, "[e]xpert testimony may be deemed unnecessary where the ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the [] service" such that the "claim is not beyond the ordinary ken of a juror," [*see* District Court Order, Doc. 239, p. 19], and Plaintiffs "need not [have] provide[d] expert testimony to survive summary judgment," *see id.*

16

a finding of liability on the part of Mr. Ahne which, as discussed above, would be improper under Rule 50. *See supra*, Part II.

To the extent the Motion could be read to seek a new trial on liability, Rule 59 of the Federal Rules of Civil Procedure provides that a court "may, on motion, grant a new trial on all or some of the issues . . . and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a). To grant a new trial under Rule 59(a), the party must demonstrate that "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice, *i.e.*, it must view the jury's verdict as against the weight of the evidence." *Maureen Christensen v. Cnty. of Dutchess, N.Y.*, 548 F. App'x 651, 653 (2d Cir. 2013). Although a Rule 59 motion is subject to a "less stringent" standard[14] than a motion under Rule 50, a court must nonetheless give a "high degree of deference" to the "jury's evaluation of witnesses credibility . . . [as] jury verdicts should be disturbed with great infrequency." *Id.*

In this case, Plaintiffs argue that the jury's verdict "went against the clear and overwhelming weight of the evidence" because Mr. Ahne "admitted that the Buyback Agreement was to protect Jae Ho Lee [and] because he represented Jae Ho Lee in a trilateral conflict along with his two [former clients, Mr. Kim and Noah Bank] with no written warning, no written disclosure and [] no written waiver . . . ." [Motion, Doc. 320-1, p. 11] ("[The Verdict] was simply

---

[14]  As explained by the Second Circuit:

> Rule 59(a) . . . has a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) "may be granted even if there is substantial evidence supporting the jury's verdict," and (2) "a trial judge is free to weigh the evidence [] and need not view it in the light most favorable to the verdict winner" . . . .

*Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003).

17

wholesale wrong."). The Court disagrees. As discussed above, Mr. Ahne provided an extensive account of the steps he undertook in representing Mr. Lee during the course of Mr. Lee's acquisition of the Debtor—an account the jury apparently believed and considered reasonable. *See supra*, Part II. Similarly, Plaintiffs' concerns regarding Mr. Ahne's prior representation of Mr. Kim and Noah Bank were concerns that—though thoroughly discussed during trial, [*see* Trial Transcript, Doc. 325-2, pp. 111–13, 189–195, 229, 386, 421, 539–541, 558–59, 589]—were ultimately not persuasive to the jury.[15] Considering the testimony and arguments presented over the course of four days of trial, the Court cannot say that the verdict rendered against Plaintiffs was "against the weight of the evidence" as required by Rule 59. *See Maureen Christensen v. Cnty. of Dutchess, N.Y.*, 548 F. App'x 651, 654 (2d Cir. 2013) ("Regardless of why the jury answered the way it did, it had enough evidence before it to arrive at that answer.").

---

[15]    The Court further notes that "[a] 'conflict of interest,' even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action." [*See* District Court Order, Doc. 239, p. 14] ("The failure to obtain written consent to a conflict of interest when one is required may support a disciplinary complaint. It does not establish a right to damages on a malpractice claim on the part of the party represented.").

18

**CONCLUSION**

For the reasons discussed above, the Court finds that:

(i) Plaintiffs' Motion pursuant to Rule 50 of the Federal Rules of Civil Procedure is procedurally barred;

(ii) even if it were timely, Plaintiffs' request for relief under Rule 50 of the Federal Rules of Civil Procedure could not be granted, and

(iii) Plaintiffs have not demonstrated their entitlement to a new trial under Rule 59 of the Federal Rules of Civil Procedure.

Plaintiffs' Motion found at [Doc. 319] and [Doc. 320] is DENIED accordingly.

**IT IS SO ORDERED.**

Dated: September 27, 2024
New York, New York

                                      /S/ John P. Mastando III
                                      HONORABLE JOHN P. MASTANDO III
                                      UNITED STATES BANKRUPTCY JUDGE